## CREE v. LEWIS.

1. **Trusts—Definition**—The holding of property by one for the use of another is a trust in its simplest form.—(189)

2. **——Resulting—Action ·to Enforce—Trial by Jury**—One having in his hands money to which another is entitled, invests it, without the other's consent, in the purchase of lands, taking title in his own name; a resulting trust arises in favor of the latter. A bill brought by him, praying the establishment of a lien upon the lands, and the sale thereof for the satisfaction of his demand, is an equitable action. The issues are to be tried by the court.—(189, 190)

3. **Trial by Jury—Equitable Action**—The right to a trial by jury depends, not upon the character of the issue, but the character of the action. That the plaintiff demands a money judgment is not decisive that the action is one at law.—(190)

Plaintiff averring that defendant holding certain corporate stock, to an interest in which plaintiff was entitled, had received certain moneys as dividends thereon, and other moneys arising from the sale of the properties of the corporation, demanded judgment for these moneys. Held, an equitable action and the issues properly tried by the court.—(191, 192)

4. **Statute of Frauds—Executed Contract**—A verbal agreement to advance money in consideration that the one making the advance shall be entitled to an interest in certain corporate stock, in case of the recovery thereof in a contemplated action, is not open to objection on the ground of its verbal character, under the statute of frauds (Mills' Stats., § 2025; Rev. Stats., § 2666), after the money has been paid and accepted.—(193, 194)

5. **Damages—Interest**—Independent of any contract or statute, one who has converted to his own use the moneys of another, may, in equity, be required to pay damages equal to legal interest thereon.—(194)

6. **Cases Overruled, Distinguished or Explained**—Dexter v. Collins, 21 Colo. 455; Hilburn v. Mercantile Bank, 39 Colo. 189; and Young v. Kimber, 44 Colo. 448, distinguished.—(194)

7. **Contract—Consideration—Inadequacy**—The allegation of a promise to make over a large interest in the capital stock of a mining corporation, in consideration of the advance of a trifling sum of money to enable its recovery, will not be discredited on the ground of the inadequacy of the consideration, though the stock afterwards turned out to be of very great value,

where it is shown that at the time of the promise the properties of the corporation disclosed no reserve of ore, and the conduct and expressions of the parties manifested that the stock was, at the time, regarded as of little value. The testimony examined and held sufficient to sustain plaintiff's allegation as to the making of the contract.—(195, 196)

*Appeal from Pueblo District Court*—Hon. JOHN H. VOORHEES, Judge.

Messrs. DEVINE & DUBBS, Mr. J. W. PRESTON, and Mr. H. C. VIDAL for appellant.

Messrs. HARTMAN & BALLREICH for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellant was the owner of two thousand shares of the capital stock of The Shurtleff Consolidated Gold Mining Company. Either by mistake or intention, the stock-book of the company purported to show that he had received a certificate for his stock, which was not the fact. The company officials, however, declined to issue him a certificate unless he furnished an indemnifying bond. Appellee claims that appellant represented to him that he was without funds to prosecute an action against the company to compel it to issue him a certificate, and offered that if he would advance him one hundred and fifty dollars and cancel an account for forty-five dollars which he held against the appellant, that the appellee should have a one-fifth interest in the stock and the proceeds thereof. Appellee also claims that he accepted the offer, and advanced the money and canceled the account, as agreed. Thereafter appellant brought suit in mandamus against the company to compel the issuance of a certificate representing his stock. He was successful in his suit, and the certificate was issued and delivered to him with the understanding and agreement, according to the claim

of appellee, that it was to remain in the name of the appellant, but was to be delivered to him, the appellee, and kept by him. Subsequently, the appellant received in the way of royalties from the property of the company various sums, aggregating $4,803.00, and later received something over $46,000.00 for his share of the proceeds of a sale of the property of the company, as represented by his stock. Appellee, as plaintiff, then brought suit to recover from the appellant, as defendant, one-fifth of the money thus received, basing his right of action primarily upon the contract which he claimed to have made and fulfilled with the defendant, as above mentioned.

The main issue of fact under the pleadings was, whether or not the parties had entered into this contract. The plaintiff claimed that the action was equitable, and therefore triable to the court. The defendant claimed that the suit was one at law, and that he was, therefore, entitled to a trial by jury. The court called a jury as advisory, and submitted certain questions for their determination. The jury failed to agree, whereupon the court discharged them, found the issues for plaintiff, and rendered judgment for him for his share of the amount received by the defendant in the way of royalties and proceeds from a sale of the property of the company, together with interest. Further relief was also granted which will be considered later. From this judgment the defendant has brought the case here for review on appeal.

The first point made by his counsel is, that the court erred in not allowing him a jury trial. Section 173 of our civil code provides that: "In actions for the recovery of specific real or personal property, with or without damages, or for money claimed as due on contract, or as damages for breach of con-

tract, or for injuries, an issue of fact must be tried by a jury, unless a jury trial is waived, or a reference is ordered, as provided in this code. In other cases issues of fact must be tried by the court, subject to its power to order any such issue to be tried by a jury, or to be referred to a referee, as provided in this code."

Under this section counsel for the defendant contends that the case was triable before a jury, for the reason that it was an action at law, in that the complaint alleged either a breach of the alleged contract made by the defendant to turn over one-fifth of his stock in the Shurtleff Company, or for money had and received by the defendant for the plaintiff, or for damages for the conversion of the stock or money of plaintiff by the defendant.

According to the averments of the complaint, a one-fifth interest in the shares of stock standing in the name of defendant was the property of plaintiff. A trust in its simplest form is that relation between two persons by virtue of which one of them holds property for the benefit of the other. That is precisely what plaintiff alleged. That is to say, by the averments of his complaint, he charged that his interest in the stock represented by the certificate issued in the name of the defendant was held in trust for him by the latter, and that he was entitled to recover the money received thereon. In brief, his action was to establish and enforce a trust. Such an action is a suit in equity, and under the last paragraph of the code above quoted the issues were triable to the court. True, plaintiff demanded and was given a money judgment, but this relief depended upon the establishment of a trust. In other words, if he failed to establish that shares of stock evidenced by the certificate issued to and in the name of defendant belonged to him, then his action would

fail; so that the basis of his action was, that the stock in question was held by the defendant in trust —purely a suit in equity. It is also true that the principal question of fact upon which depended the issue of trust was the simple one of whether the contract upon which plaintiff relied was entered into with the defendant; but the right to have an issue of fact tried by a jury is not determined by the nature of the issue, but by the character of the action in which such issue is joined. That is to say, if an issue of fact relates to or involves a trust which the party tendering it is attempting to establish, it is triable to the court. — *United Coal Co. v. Canon City Coal Co.,* 24 Colo. 116; *Danielson v. Gude,* 11 Colo. 87.

The fact that plaintiff asked for a money judgment is by no means decisive that the action was one at law. If he established the trust upon which he relied, then he was entitled to recover from the defendant the money which he had received on account of the stock held in trust for the plaintiff. Courts of equity do not, however, try cases by piecemeal. It has been settled by repeated decisions, that when a court of equity has jurisdiction of a cause for one purpose, it may retain such jurisdiction for the purpose of deciding the whole controversy, and determining the rights of the parties before it, notwithstanding that for a part of such relief the complainant might have a remedy at law, and thus establish purely legal rights and grant legal remedies, which would otherwise be beyond the scope of its authority.—*Packard v. King,* 3 Colo. 211; *Schilling v. Rominger,* 4 Colo. 100; *Whitsett v. Kershow, ibid.,* 419; *United Coal Co. v. Canon City Coal Co., supra;* Pomeroy's Equity Jurisprudence, § 181.

But even if it could be successfully contended that the case stated, in so far as it sought to hold

the defendant responsible for the money received on account of the stock which plaintiff claimed to own, was not of itself a case in equity, he pleaded further facts which made the case one in equity by alleging, in substance, that defendant, without his (the plaintiff's) consent, invested his share of the money represented by the stock in question in certain real estate, taking the title thereto in his (the defendant's) name. From these averments a resulting trust in favor of plaintiff was stated, for the reason that if one take unto himself a title to real estate which he has purchased with the money of another, he is a trustee for the true owner.—*First National Bank v. Bissell,* 4 Fed. 694. So that, under the averments of the complaint with respect to the allegations relating to the purchase of real estate, the title thereto was held in trust by the defendant for the use of plaintiff, if he established his right to a share of the money which he claimed the defendant had received for the pro rate share realized from royalties and a sale of the company as represented by the stock which he claimed belonged to him.

Based on these averments, plaintiff prayed that the judgment for money to which he claimed to be entitled be decreed a lien upon the premises in question, and that they be sold under the order and direction of the court for the purpose of satisfying such lien. This was proper and equitable relief, if plaintiff established facts upon which his right thereto was based. Wrongfully converting funds which belong to another does not create the relation of debtor and creditor, and nothing more. The owner of such funds may resort to a suit in equity to recover them if the facts justify that character of action. Where the money of one is wrongfully used by another for the purchase of real estate, the

party to whom such money belongs may impress the property so purchased so long as it stands in the name of the wrong-doer with an equitable lien in the nature of a resulting trust to the extent his money was used in its purchase.—*Moore v. Stinson,* 144 Mass. 594; *Atkinson & Co. v. Ward,* 47 Ark. 533.

So that, with respect to the real estate, the action was to establish and enforce a trust based upon the ground that defendant had invested in real estate funds belonging to the plaintiff, which was a case in equity, independent of whether. the facts upon which the ownership of the money so invested was determined made a case in equity or one at law. The fact that plaintiff might have contented himself with an action in assumpsit to establish and enforce his rights, did not destroy his right to resort to a court of equity in order to do so. In the circumstances of this case, the choice of remedies rested with him.

It is next urged that the contract is void under the statute of frauds. In support of this proposition, section 2025 M. A. S. is relied upon, which, in substance, provides that contracts for the sale of goods or chattels for the price of fifty dollars or more shall be void unless such contract be made in writing, and subscribed by the party to be charged therewith, or unless the buyer shall accept and receive part of such goods, or unless he shall at the time pay some part of the purchase money. According to the complaint, the money which plaintiff agreed to pay was paid by him and received by the defendant, and the contract between them in all respects executed. From the testimony on the part of the plaintiff, part of the money was paid by him at the time the contract was made, and the contract was subsequently executed; consequently, the statute of frauds does not apply for two reasons: (1) Its provisions were complied with; and (2) an oral

agreement, although unenforceable by reason of the statute of frauds, is no longer affected by the statute when it has been performed by the parties.—20 Cyc. 302; *McLure v. Koen,* 25 Colo. 284.

It is also urged that the court erred in allowing plaintiff to recover interest from July 1, 1904, to the date of the decree, or in allowing any interest upon plaintiff's claim. The court found from the testimony that defendant had received a specified sum on account of royalties from the sale of the property of the company, and that plaintiff was entitled to have and recover from the defendant one-fifth of this sum, less a small amount theretofore paid, together with interest thereon at the rate of eight per cent. per annum from the first day of July, 1904. It is urged that fixing the date for the beginning of plaintiff's claim to interest is arbitrary, and is not supported by the record. The testimony on behalf of the plaintiff does not sustain this contention. Plaintiff knew that in 1903 the defendant had received a large part of the money represented by the stock in controversy, but the latter persuaded plaintiff to wait for his proportion because the full payment had not been made. As late as June, 1905, the defendant informed the plaintiff that he had not yet received all of the money to which he was entitled, although it appears he did actually receive it in June, 1904. It also appears, as we understand the record, that prior to June, 1904, defendant had invested in real estate, from the moneys received on account of the stock, a sum largely in excess of plaintiff's share. So that, according to the testimony on behalf of the plaintiff, the defendant cannot complain that he was adjudged to pay interest from July 1st, 1904, if he was liable for interest at all, or its equivalent as damages, which is the next question we shall consider.

(13)

On behalf of the defendant it is urged that under our statute plaintiff was not entitled to interest. Accepting this as correct, it by no means follows that the court erred in awarding plaintiff a sum equal to the legal rate of interest on the amount which it was adjudged he was entitled to recover from the defendant. The defendant, instead of paying to plaintiff his pro rate share of the money to which he was entitled, invested it in real estate — in brief, converted it to his own use. Independent of contract or statute, a court of equity, in its sound discretion, may require one who has converted to his own use the funds of another to pay damages equal to the legal rate of interest, as compensation to the complainant for the loss of the use of his funds.—*Fillmore v. Reithmann,* 6 Colo. 120; *Cooper v. Hill,* 94 Fed. 582; *New Dundenberg M. Co. v. Old,* 97 Fed. 150.

For further authorities bearing on the subject, see *Omaha & Grant S. & R. Co. v. Tabor,* 13 Colo. 41; *Sutton v. Dana,* 15 Colo. 98; *Perkins v. Marrs, ibid.,* 262; *Sylvester v. Craig,* 18 Colo. 44.

Counsel for defendant cite *Dexter v. Collins,* 21 Colo. 455; *Hillburn v. The Mercantile National Bank,* 39 Colo. 189, and *Young v. Kimber,* 44 Colo. 448, in support of their contention that interest should not have been allowed. These cases are clearly distinguishable from the one at bar, for the reason that they do not involve a misappropriation of funds.

The final question urged upon our attention is, that the findings and decree of the court are not sustained by the evidence, in so far as it relates to the contract which plaintiff claims to have entered into with the defendant, and performed. Plaintiff testified positively and unequivocally that the contract upon which he relies was made as set out in

his complaint, and fully performed by him. His testimony was corroborated by several disinterested witnesses. Notwithstanding that the evidence was clear on the part of plaintiff on the subject of the contract, it is claimed that it is so improbable and absurd because of the inadequacy of the consideration therefor, that his testimony should not be believed. These were matters for the trial judge to consider; but, aside from this, the record does not show such gross inadequacy of consideration for the contract as to justify the conclusion that the parties never entered into it. At the time the contract was made, the property of the Shurtleff Company only showed assay values. Its value was entirely prospective; consequently, the stock of the company possessed but a nominal value per share.

The defendant claims that prior to the date when he commenced his suit in mandamus, he had been offered a large sum for his interest in the property. This offer was made at a time when the property was showing ore which was afterwards exhausted. After that it did not become valuable by the discovery of ore bodies until a considerable time subsequent to the date when the contract between the parties was made. Certain it is, according to testimony introduced, that defendant was unable to secure, either by way of loan or sale of an interest in his stock, a sufficient sum to enable him to prosecute his suit against the company. This indicates that it was not regarded as of much value. The action by defendant to compel the issuance of a certificate to him was commenced and tried in the county court of Teller County. In his complaint filed in the case, which was verified, he alleged that the value of the stock represented by the certificate to which he was entitled did not exceed two thousand dollars. His share of the stock was one-third of all

that had been issued. This statement does not indicate that he regarded either the property or his stock of any great value. On the contrary, it tends strongly, to say the least, to corroborate the testimony of the wife of plaintiff, to the effect that the defendant considered the value of the stock as prospective only, by what he said when he obtained his certificate and handed it to her husband: "Here, old boy, take this stock and take good care of it. It may be worth something to you and I some time, but I don't believe there is a pound of ore in that mine."

It is not to be denied that plaintiff is receiving a very large return upon his investment, but that is not a reason why his contract should not be enforced. He took the chance of losing his investment entirely. If defendant had not been successful in his suit against the company to obtain his certificate, to pay the expense of which plaintiff furnished the money, his investment would have been a total loss. That defendant so regarded it is well illustrated by the testimony of the wife of plaintiff as to what defendant said when her husband paid the first money on the contract, which, she says, was as follows: "Now, I want you both to understand that if I get anything, you are taking chances with me—if I get nothing, you get nothing, but if I get my stock, Mr. Lewis—Al—is to have a fifth interest in my stock." Again, if a certificate for the stock was obtained, then the result of plaintiff's venture depended entirely upon what the mine might develop in the future.

Much stress is laid upon the fact that plaintiff waited for a considerable time for his share of the money represented by his interest in the stock after it was received by the defendant before commencing suit, but that is fully explained in his testimony. He

was induced to wait upon the representation of the defendant that he had not as yet received all the money to which he was entitled, and that he would settle with him as soon as it was all paid. We find in this case, like all others of a similar character, a decided conflict in the testimony on the subject of the contract upon which plaintiff based his right to the relief granted him by the trial court, but this conflict was decided in favor of the plaintiff, and under repeated decisions, we will not disturb such findings where the testimony, as it is in this case, is amply sufficient to sustain them.

The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE MUSSER concur.